UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STARR INDEMNITY AND LIABILITY CO., <br><br> Plaintiff, <br><br> v. <br><br> THE WHITING-TURNER CONTRACTING COMPANY, <br><br> Defendant. | Civ. No. _____ <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT** |

## INTRODUCTION

This is an action for declaratory judgment and related relief. As set forth below, Starr Indemnity and Liability Company ("Starr") seeks a determination that no coverage is owed under certain policies of excess insurance issued to the Whiting-Turner Contracting Company ("WTC"), for costs incurred by WTC in voluntarily remediating deficient work at a rodent breeding facility in Ellsworth, Maine.

## PARTIES

1. Starr is an insurance company. It is incorporated in Texas, with its principal place of business in New York, New York. It issued various policies of excess insurance to WTC, including Excess Policy No. 1000024126 (eff. 8/1/18 – 8/1/19), Excess Policy No. 1000585-941191 (eff. 8/1/19 – 8/1/20) and Excess Policy No. 1000585941201 (eff. 8/1/20 – 8/1/21) (the "Starr Policies"). The Starr Policies sit over primary policies issued by other carriers, and provide coverage in excess of those other policies' limits.

2. WTC is a general contractor, which conducts business nationally. It is incorporated in Maryland, with its principal place of business in Baltimore, Maryland; and is identified as First

28423923v.1

Named Insured under the Starr Policies above.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1332, because this is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs

4. Venue is proper under 28 U.S.C. § 1391(b)(2) because the subject of WTC's insurance claim is located in this judicial district; and a substantial part of the events giving rise to the parties' dispute occurred here.

## BACKGROUND
### The Project And Alleged Deficiencies

5. In mid-2017, WTC allegedly signed a contract (the "Contract") with Jackson Laboratory ("Jackson"). The Contract called for WTC to serve as construction manager in remodeling a former Lowe's Home Improvement retail facility in Ellsworth, Maine, to serve as a rodent breeding facility (the "Project")

6. The contract between WTC and Jackson called renovation to take place in two phases. Phase I began in 2017 and was completed in August 2018. Phase II began in January 2019, and was completed some time thereafter.

7. During Phase II of the Project, WTC subcontracted certain painting work at the Project to John W. Eagan & Co. ("Eagan"), and certain drywall work to Optimum Building Systems, LLC ("Optimum").

8. EYP Architecture ("EYP") was Architect of Record for the Project. On information and belief, in July 2020, Jackson and EYP allegedly discovered deficiencies in drywall surfaces

that were part of Phase II of the Project. These deficiencies included paint blisters around supply exhaust diffusers in the ceilings of several rooms.

9. Jackson reportedly engaged the services of Wiss Janney Elstner Associates ("WJE") to investigate these issues. Some time thereafter, on or about August 26, 2020, WJE issued a report saying the blisters in the paint were caused by a chemical reaction between a silicone sealant and a joint compound.

10. EYP and Jackson rejected the Phase II ceilings as nonconforming, and directed WTC to repair the localized areas where the blisters had been observed. In September 2020, an approved method of repair was developed to correct the localized blistering, and in October 2020, the Project was turned over to Jackson.

11. At no time, prior to the turnover of the Project, was Starr notified that the Phase II ceilings had been rejected as nonconforming. At no time was Starr informed that WTC had been directed (or had agreed) to make repairs to its ongoing work. At no time was Starr consulted or advised as to the remedial efforts that WTC was undertaking.

## Continuing Issues

12. A few weeks later, after taking over the Project, Jackson cleaned the Project ceilings and performed a sanitization procedure. After this procedure, Jackson reported more blistering and deficiencies on ceiling finishes where sanitization had occurred. EYP and Jackson then rejected the ceiling installation as non-conforming.

13. In November 2020, EYP told WTC it believed the blistering was caused by a chemical reaction that had occurred with Jackson's cleaning products, which in turn was caused by "non-compliance with the project specifications and improper application of the coating

system." Again, WTC did not notify Starr of this determination, and did not tell Starr that the installation had been rejected as non-conforming.

### Voluntary Repairs By WTC

14. No lawsuit was ever filed against WTC with respect to the Project.

15. Instead, Jackson, EYP, and WTC reached a joint decision -- without notifying or involving Starr -- that the ceilings at the Project needed to be demolished and replaced with new drywall, and proper joint compound, and re-painted. This ceiling replacement project also included the removal of installed lights, robotics, fire suppression, conveyance, and other components and fixtures.

16. On information and belief, WTC performed the ceiling replacement itself, with the assistance of subcontractors. WTC has not paid any money to Jackson, in the form of damages or otherwise, in connection with the alleged deficiencies at the Project.

### Tender to Starr

17. In July 2021, WTC notified Starr (for the first time) of the alleged deficiencies at the project; and told Starr that it was remediating these deficiencies. WTC then demanded coverage under the Starr Policies.

18. By the time that WTC reported these events to Starr, it had already spent in excess of $17 million on the remediation efforts.

19. On information and belief, WTC's decision to remediate the Project was not compelled by any legal judgment, nor did any neutral finder of fact ever determine that WTC was negligent or responsible for the alleged deficiencies at the Project. On information and belief, WTC agreed to remediate the Project for business reasons; and because it believed its contract with Jackson required it to do so.

20. On February 2, 2022 Starr wrote a letter to WTC (the "Declination Letter"), which set out Starr's coverage position in this matter, and denying coverage under the Policies.

## STARR POLICIES - RELEVANT LANGUAGE

21. The Starr Policies are excess of primary policies issued by Travelers with limits of $2 million per occurrence and $4 million in the aggregate (the "Travelers Policies"). With the exception of their own terms, definitions, conditions and exclusions, the Starr Policies follow form to the Travelers Policies.

22. The Insuring Agreements of the Starr Policies provide, in pertinent part, that:

> We will pay on behalf of the Insured, the "Ultimate Net Loss" in excess of the "Underlying Insurance" as shown in ITEM 5. of the Declarations, **that the Insured becomes legally obligated to pay for loss or damage** to which this insurance applies and that takes place in the Coverage Territory. Except for the terms, definitions, conditions and exclusions of this Policy, the coverage provided by this Policy shall follow the terms, definitions, conditions and exclusions of the applicable First Underlying Insurance Policy(ies) shown in ITEM 5.A. of the Declarations.
>
> Regardless of any other warranties, terms, conditions, exclusions or limitations of this Policy, if any applicable Underlying Insurance Policy(ies) does not cover "Ultimate Net Loss" for reasons other than exhaustion of its limit of liability by payment of claims or suits, then this Policy will not cover such "Ultimate Net Loss ... (emphasis added).

The term "Ultimate Net Loss" is defined, in pertinent part, to mean:

> the total sum, after reduction for all recoveries including other valid and collectible insurance, excepting only the "Underlying Insurance" scheduled under ITEM 5. of the Declarations, **actually paid or payable due to a claim or suit for which you or an Insured are liable either by a settlement to which we agreed or a final judgment.** (emphasis added).

23. The amounts that WTC seeks to recover from Starr do not constitute "Ultimate Net Loss" because they do not constitute amounts that WTC is liable, either by a settlement to which

Starr agreed, or by a final judgment. There is no final judgment against WTC, and to the extent that WTC entered into any settlement related to the Project, Starr did not agree to that settlement.

24. Moreover, the amounts that WTC seeks do not constitute amounts that that WTC was "legally obligated to pay for loss or damage." Rather, WTC voluntarily agreed to incur the remediation costs for which it seeks coverage, and it did so prior to notifying Starr of any of the alleged issues with the Project.

25. For these reasons, WTC's claim does not satisfy the Insuring Agreements of the Starr Policies.

26. Beyond this, Condition H.4 of the Starr Policies provides that:

> No Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

27. Insofar as the amounts that WTC seeks to recover from Starr are associated with obligations that WTC voluntarily assumed, expenses that it voluntarily incurred, and/or payments voluntarily made without Starr's consent, WTC has breached Condition H.4. of the Policies, and the obligations incurred are "at [WTC's] own cost."

28. Condition H of the Starr Policies provides, further, that

> 1. You or an Insured must see to it that we are notified as soon as practicable of an accident, occurrence or wrongful act which is reasonably likely to result in a claim or suit to which this insurance may apply.
>
> To the extent possible, notice will include:
>
> a. How, when and where the accident, occurrence or wrongful act took place;
>
> b. The names and addresses of any injured persons and witnesses;

      c.      The nature and location of any loss, injury or damage arising out of the accident, occurrence or wrongful act.

2.     If a claim is made or a suit is brought against an Insured that is reasonably likely to involve this Policy, you or an Insured must notify us in writing as soon as practicable.

3.     You and an Insured must:

      a.      Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;.

      b.      Authorize us to obtain records and other information;

      c.      Cooperate with us in the investigation, settlement or defense of the claim or suit; and

      d.      Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of loss or damage to which this insurance may also apply.

29.     Here, insofar as WTC did not provide any information about the issues at the Project until it had already agreed to perform remediation and incurred approximately $17 million, WTC has breached this Policy Condition relating to notice.

30.     Further, Condition I of the Starr Policies says, in pertinent part, that "[i]f other insurance applies to 'Ultimate Net Loss' that is also covered by this Policy, this Policy will apply excess of, and will not contribute to, the other insurance." Here, to the extent that there is coverage under the Starr Policies – which is denied – that coverage is excess of other insurance that may cover WTC's claim.

## TRAVELERS POLICIES - RELEVANT LANGUAGE

31.     In addition to the Starr Policy language above, the Starr Policies follow form to the underlying Travelers Policies, in material respects. As a result, there is no coverage under the Starr Policies to the extent that the Travelers Policies do not cover the amounts WTC claims to

have spent. Likewise, and similarly, there is no coverage under the Starr Policies to the extent that the Travelers Policies have not responded to covered damages an amount exceeding those underlying policies' limits. Importantly, Starr is not bound by any determination Travelers makes in this regard; Starr is entitled to independently evaluate the existence (or non-existence) of coverage under the Travelers Policy language.

        32.       The Travelers Policy Insuring Agreements provide, in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…. [b] This insurance applies to "bodily injury" and "property damage" only if: ... The bodily injury or property damage is caused by an "occurrence."

        33.       Here, as noted, there has been no lawsuit or other legal proceeding, under which WTC became "legally obligated to pay" any amounts "as damages."

        34.       Moreover, and relatedly, the amounts that WTC has agreed to pay, in connection with the remediation of the issues at the Project, were not incurred because of "property damage," caused by an "occurrence," as the Travelers Policies define these terms.

        35.       Instead, most, if not all, of the amounts WTC seeks to recover from Starr are economic harms, associated with the correction of WTC's own faulty work, or amounts that WTC was contractually obligated to incur to complete the Project.

        36.       In addition to the language of the Travelers Policy Insuring Agreements, above, the Travelers Policies also include a number of exclusions, limitations, and conditions, which operate – separately and together – to bar coverage even if the Insuring Agreement of the Travelers Policies were to be satisfied. For example, Exclusion b of the Travelers Policies bars coverage -- with certain exceptions -- for "property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Here, insofar as the amounts that

WTC seeks were incurred because of "the assumption of liability in a contract or agreement," there is no coverage for WTC's claims.

37. Likewise, Exclusion J(5) of the Travelers Policies states -- in pertinent part -- that there is no coverage for property damage to "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." Here, insofar as the amounts that WTC seeks were incurred during ongoing operations, and fall within the language of this exclusion, there will be no coverage for WTC's claims.

38. Likewise, Exclusion J(6) states that there is no coverage for property damage to "that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it." Here, insofar as the amounts that WTC seeks were incurred during ongoing operations, and fall within the language of Exclusion J.6., there will be no coverage for WTC's claims.

39. Likewise, Exclusion L states that the Travelers Policies do not apply to "property damage to the insured's work arising out of it or any part of it and included in the 'products-completed operations hazard'. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Here, insofar as insofar as the amounts WTC seeks were part of the products - completed operations hazard, and fall within the language of Exclusion L., there will be no coverage for WTC's claims.

40. Likewise, Exclusion M states that the Travelers Policies do not apply to "property damage' to 'impaired property' or property that has not been physically injured, arising out of: [1] [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work;' or [2] [a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in

accordance with its terms." Here, insofar as the amounts WTC seeks fall within the language of Exclusion M., there will be no coverage for WTC's claims.

41. To the extent that the foregoing exclusionary language requires a determination of when damage occurred, Travelers Policy Endorsement XS - 134 (10/08) provides, in pertinent part:

> In the event of continuing or progressively deteriorating damage, such damage shall be deemed to occur only when such damage commences. If the damage occurs during the Policy Period, our Limits of Insurance in effect at the time of such commencement shall be the only limits that apply.

42. Other Endorsements, appearing in the Travelers Policies, may also be relevant to this claim. For example, Travelers Policy Endorsement CG D546 1011 bars coverage for property damage arising out of certain professional services, including:

> a. Providing, or hiring independent professionals to provide, architectural, engineering or surveying services to others in any insured's capacity as an architect, engineer or surveyor; or
>
> b. Providing, or hiring independent professionals to provide, architectural, engineering or surveying services in connection with construction work any insured performs.

Likewise, Endorsement CG D3 31 08 13 on the Travelers Policies bars coverage -- with limited exceptions – for "property damage" arising out of any project that is or was subject to a "wrap-up insurance program.".

43. The Travelers exclusionary language, noted above, is incorporated into the Starr Policies. Most, if not all of the amounts WTC seeks would be independently precluded by the above provisions, even if WTC's claim were (somehow) determined to satisfy the insuring agreements of the Travelers and Starr Polices – which it does not.

44. Additional Policy language, and other considerations relevant to coverage in this matter, was set forth by Starr in its Declination Letter dated February 2, 2022, which set forth Starr's coverage position, based on the information provided by WTC, and declined coverage for the claims WTC had tendered.

## COUNT I
## DECLARATORY JUDGMENT

45. Starr incorporates each of the foregoing allegations as if fully set forth here.

46. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Starr is entitled to a determination concerning the parties' rights and obligations, if any, under the Starr Policies in connection with the Project.

47. For the reasons set forth herein and in Starr's Declination Letter, Starr is entitled to a declaration that it has no duty to provide coverage to WTC with respect to the Project under the Starr Policies.

48. There exists an actual and justiciable controversy between Starr and WTC as to this matter, as to which Starr has no adequate remedy at law.

WHEREFORE, Starr prays that the Court declare that Starr has no duty to indemnify WTC with respect to the Project or otherwise cover any amounts that WTC has incurred with respect to the Project; and order such other relief as may be appropriate, just and proper.

Dated at Portland, Maine, this 2nd day of February, 2022

                                             */s/ Benjamin J. Wahrer*
                                             Benjamin J. Wahrer, Esq.
                                             Attorney for Plaintiff
                                             Starr Indemnity & Liability Company

**THOMPSON BOWIE & HATCH LLC**

28423923v.1

415 Congress Street, Fifth Floor
P.O. Box 4630
Portland, ME 04112
(207)-774-2500
bwahrer@thompsonbowie.com

Eric B. Hermanson (PHV to Follow)
Austin D. Moody (PHV to Follow)
WHITE AND WILLIAMS LLP
101 Arch Street, Suite 1930
Boston MA  02110-1103
Telephone: (617) 748-5200
Fax: (617) 748-5201
hermansone@whiteandwilliams.com
moodya@whiteandwilliams.com

28423923v.1