UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STARR INDEMNITY AND LIABILITY CO., | ) ) ) |
| Plaintiff | ) ) |
| v. | ) 1:22-cv-00031-NT ) |
| THE WHITING-TURNER CONTRACTING COMPANY, | ) ) ) ) |
| Defendant | ) |

**ORDER ON PLAINTIFF'S MOTION TO COMPEL**

In this action in which Plaintiff asks the Court to declare that it is not obligated to indemnify Defendant for the repair costs Defendant incurred in connection with a construction project at Jackson Laboratory, Plaintiff moves to compel Defendant to produce various documents exchanged between Defendant and its insurance broker. (Motion to Compel, ECF No. 33.)  After consideration of the parties' arguments and following an in camera review of the disputed documents, the Court grants Plaintiff's motion.

**FACTUAL BACKGROUND**

Beginning in December 2020, Defendant made certain repairs to the work it and its subcontractors performed for Jackson Laboratory. After completion of the repairs, Defendant, through its insurance broker (RCMD), submitted a claim with Plaintiff, which had provided excess liability insurance coverage for the relevant time.  Plaintiff denied coverage for the claim and commenced this declaratory judgment action.

In discovery, Plaintiff requested documents that reflect communications between Defendant's representatives and RCMD. Defendant objected to the request, claiming that the documents are privileged and otherwise protected from discovery by the work product doctrine.

## DISCUSSION

The party asserting a privilege to withhold documents responsive to a legitimate discovery request bears the burden of demonstrating the applicability of the privilege. *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 69 (1st Cir. 2011). In citing privilege as a basis for withholding production of the documents, Defendant evidently relies on the attorney-client privilege and the work product doctrine.

As the Court explained in its recent order on Defendant's motion to compel, the applicability of the attorney-client privilege in this diversity action is governed by Maine law. (Order at 3-4, ECF No. 45.) Maine Rule of Evidence 502 provides in relevant part:

> A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of any confidential communication:
>
> (1.) Between the client or client's representative and the client's lawyer or lawyer's representative;
>
> (2.) Between the lawyer and the lawyer's representative;
>
> (3.) By the client, the client's representative, the client's lawyer, or the lawyer's representative to a lawyer representing another party

>> in that pending action concerning a matter of common interest in a pending action;
>
> (4.) Between the client's representatives, or between the client and his or her representative; or
>
> (5.) Among the client's lawyers and those lawyers' representatives.

Me. R. Evid. 502(b). "A communication is 'confidential' if it is made to facilitate the provision of legal services to the client and is not intended to be disclosed to any third party other than those to whom the client revealed the information in the process of obtaining professional legal services." *Id*. at 502(a)(5).

Defendant contends that the privilege applies because the documents consist of confidential communications between a client representative (RCMD) and Defendant's corporate counsel. Defendant's argument is unavailing. As the parties note, for the communications to be privileged, RCMD would have to be within Defendant's "control group." Under Maine law, the "control group test [] includes as corporate representatives only those officers, usually top management, who play a substantial role in deciding and directing the corporation's response to the legal advice given, and other individuals who have sufficient authority to make decisions for the client." *Harris Management, Inc. v. Coulombe*, 2016 ME 166, ¶ 15, 151 A.3d 7, 14 (internal citations and quotation marks omitted). The record lacks any persuasive evidence that would support the conclusion that RCMD had the authority to make decisions for Defendant. Rather, the documents reflect that RCMD was the conduit by which the claim and perhaps other related information were

3

provided to and from Plaintiff. Communications between Defendant's counsel and RCMD employees are not protected by the attorney-client privilege.

Some of the communications between Defendant's employees and RCMD employees contain embedded prior communications among Defendant's own employees, including in-house counsel. Although the context and content of the documents suggest that Defendant did not expect that RCMD would reveal all the communications to Plaintiff, even assuming that the underlying internal communications with in-house counsel were within the scope of the privilege, Defendant has not established that the documents remained protected after they were disclosed to RCMD employees. *Cavallaro v. United States*, 284 F.3d 236, 246–47 (1st Cir. 2002) ("Generally, disclosing attorney-client communications to a third party undermines the privilege").

As Defendant's argue, disclosure to certain third parties or under certain circumstances would not vitiate the privilege. The privilege would continue to apply if the communications were shared with the attorney's agents or "third parties employed to assist a lawyer in rendering legal advice," such as an accountant who is present during confidential discussions of the facts of a tax case. *Id.* This rule, or exception to the rule that the privilege does not apply to communications disclosed to a third-party, does not apply to the documents submitted for the Court's in camera review. The documents reveal that RCMD's primary role was to help generate and submit Defendant's communications to the insurer and to keep Defendant's employees apprised of the status of the claims process. While Defendant apparently also sought RCMD's assistance in convincing the

4

primary and excess insurers to cover the claim, RCMD is not a law firm, and its role was not as a legal advisor.

In further support of their privilege argument, Defendant cites the "common interest" doctrine, also known as the "joint defense," "joint client," or "allied lawyer" doctrine, which exempts from the general third-party disclosure rule communications between multiple clients and each other's attorneys or a shared attorney provided the clients have a common legal interest. *Id.* at 249–50; *see also*, *Citizens Communications Co. v. Attorney General*, 2007 ME 114, ¶ 16, 931 A.2d 503, 506 ("the common interest component of the privilege prevents clients from waiving the attorney-client privilege when attorney-client communications are shared with a third person who has a common legal interest with respect to the communications, such as a co-defendant"). "The term 'common interest' typically entails an identical (or nearly identical) legal interest as opposed to a merely similar interest." *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000). Although an insured and a broker might typically have related business interests, and although one or more RCMD employees might have considered themselves to be part of a team effort with some of Defendant's employees, and although RCMD attempted to assist Defendant in obtaining payments from the primary and excess insurers, RCMD was not a party to the litigation, the record lacks any evidence to suggest RCMD was a potential party to the litigation, and RCMD's role was as an intermediary. Under the circumstances,

5

the Court is not persuaded that Defendant and RCMD had a sufficiently unified legal interest for the doctrine to apply.[1]

Defendant's work product argument is similarly unconvincing as applied to most of the disputed documents.  The work product doctrine, codified for purposes of pretrial discovery within Rule 26, protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," unless the materials are otherwise discoverable and the party seeking production "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).  The work product doctrine does not extend to "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for nonlitigation purposes," even if the materials were prepared by a lawyer and reflect "legal thinking." *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 30 (1st Cir. 2009) (quoting Fed. R. Civ. P. 26 advisory comm.'s note (b)(3) (1970)).  The issue is "whether, in light of the nature of the document and the factual situation in the particular case, the document can

---

[1] Defendant cites some cases in which courts found that an insured's disclosures to an insurance broker did not waive confidentiality, but most of the cases involved a greater alignment of the relevant legal interests, such as when the insurer, the broker, and the insured undertake a joint defense of the insured.  *See, e.g.*, *Dansko Holdings, Inc. v. Ben. Tr. Co.*, No. 16-324, 2017 U.S. Dist. LEXIS 192230, at *18 (E.D. Pa. Nov. 21, 2017); *see also*, *Lionbridge Techs., LLC v. Valley Forge Ins. Co.*, 53 F.4th 711, 725 (1st Cir. 2022) (for purposes of the common interest doctrine, "[i]n the insurance context, we have explained that Massachusetts law considers an attorney retained by an insurer to represent the insured as the attorney for both") (internal quotation marks omitted).

fairly be said to have been prepared or obtained because of the prospect of litigation." 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2024 (3d ed. 2020).

In this case, the documents prepared before Plaintiff's denial letter and federal complaint do not suggest Defendant anticipated litigation with Plaintiff at the time of the communications with RCMD, except perhaps in the abstract, which is insufficient given that the business activities of insurance claims operate against a general backdrop of the possibility of litigation at some future date. *See S. D. Warren Co. v. E. Elec. Corp.*, 201 F.R.D. 280, 285 (D. Me. 2001). Instead, the documents reflect that Defendant provided information to RCMD and sought information or opinions from RCMD for the business purposes of submitting the claims and attempting to secure payment from the insurers. Defendant has not demonstrated that the documents prepared before Plaintiff's denial letter and complaint are within the work product doctrine.

Some of the documents created after Plaintiff denied Defendant's insurance claim and filed its complaint, however, are more directly related to litigation or trial. Many of the documents relate to other negotiations (i.e. with subcontractors) and claims (i.e. with Travelers), which were not prepared in anticipation of litigation and would have been essentially the same even if Plaintiff had taken a different course of action. Other communications and drafts concern Plaintiff and this litigation. The Court is persuaded that the post-denial letter documents in which Defendant's claim for coverage by Plaintiff is discussed can reasonably be viewed as having been prepared in anticipation of litigation

7

or trial. In other words, Defendant has demonstrated that the post-February 2, 2022, documents regarding its claim for coverage by Plaintiff were prepared for or by the client or its representatives in anticipation of litigation.[2] Because Plaintiff does not argue and has not established sufficient need to overcome the qualified protection of the work product doctrine, the Court concludes that the documents identified in the log prepared after February 2, 2022, regarding Defendant's claim for insurance coverage by Plaintiff are protected from discovery.

## CONCLUSION

For the foregoing reason, the Court grants Plaintiff's motion to compel production of the communications between Defendant and RCMD, except Defendant may withhold or redact information created after February 2, 2022, regarding its claim for insurance coverage by Plaintiff.[3]

---

[2] Although some of the principles or concepts that govern the attorney-client privilege and the work product doctrine are similar, "[t]he work product doctrine is distinct from and broader than the attorney-client privilege." *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 139 F.R.D. 269, 274 (D. Mass. 1991) (citing *United States v. Nobles*, 422 U.S. 225, n. 11 (1975)). For instance, client representatives for purposes of the work product doctrine would often constitute a broader group than the "control group" that is relevant to the attorney-client privilege analysis.

[3] Defendant's other arguments are also unpersuasive. For example, although Defendant evidently sought RCMD's knowledge regarding the claims process and negotiations with the primary insurer and with subcontractors, there is no basis to conclude that the employees were retained or the communications arose out of an effort to retain RCMD's expert knowledge within this litigation.

## **NOTICE**

Any objections to this order shall be filed in accordance with Federal Rule of Civil Procedure 72.

                                                                                        s/ John C. Nivison  
                                                                                        U.S. Magistrate Judge

Dated this 4th day of October, 2023.