UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STARR INDEMNITY AND LIABILITY CO., <br><br> Plaintiff, <br><br> v. <br><br> THE WHITING-TURNER CONTRACTING COMPANY, <br><br> Defendant. | Docket No. 1:22-CV-00031-NT |

**REPLY IN FURTHER SUPPORT OF STARR'S
MOTION FOR SUMMARY JUDGMENT**

When WTC gave Starr notice of this matter in July 2021, it said nothing about wanting a defense. It said there had been a dispute with one of its customers, Jackson Laboratories, Inc. ("Jackson"). It said it had incurred "damages" of $17M repairing the conditions Jackson identified. It said it was seeking "coverage" for those amounts. It said it was putting Starr on notice because Starr was a first excess insurer, sitting over a primary policy issued by Travelers. ECF 61-13, Exh. 23. It provided a link to a drop-box of documents, *id.*, but when Starr reviewed those documents, none suggested any request for defense was being made. Bahleda Tr., ECF 61-20, pp. 105:12 - 109:10. Indeed, on further examination, it became clear there was no active "claim" by Jackson as to which a defense <u>could</u> be requested. WTC had already fixed the Project. All the issues Jackson identified had been voluntarily repaired. WTC might have a claim against Jackson at some point, to try to get back some of the costs it had incurred; but Jackson had no extant "claim" it was pursuing against WTC. *Id.*, pp. 84:25 - 85:17; 103:7 - 103:24.

In the months that followed, Starr analyzed WTC's tender in detail. ECF 61-20, pp. 67-70 of 138. In October 2021, Starr learned Travelers had agreed to pay $2M -- <u>not</u> to Jackson, or to

resolve any ongoing dispute, but to WTC, in exchange for a release of any future claim WTC might make under the Travelers policy. *Id.* Even after this, WTC did not amend the notice it had provided to Starr. *Id.* There was never any suggestion that Travelers payment changed anything in WTC's mind, or that WTC thought the payment triggered any "defense" obligation on Starr's part. *Id.* There was still no "claim" pending by Jackson against WTC. *Id.*

In February 2022, Starr completed its analysis. It said it was denying WTC's tender. ECF 61-17, Exh. 27. It filed suit to establish its position was correct. *Id.*; ECF 1. WTC wrote back. ECF 61-18, Exh. 28. Through its broker, it took issue with Starr's position. *Id.* But -- again -- WTC never said Starr owed any kind of defense. *Id.* Nor has WTC made any clear demand for a defense in the two years this litigation has been pending. It was not until the closing days of discovery that Starr learned -- for the first time, to its surprise -- that WTC's lawyers planned to argue some "defense" was owed, at some point, somehow, as to some unspecified "claim" by Jackson, as to some "damages" WTC was supposedly facing -- even though there was no pending complaint against the company, and Travelers policy had never properly exhausted.

## ARGUMENT

**I. WTC's Failure To Tender For Defense Bars It From Seeking Defense Now.**

It is black-letter law in most jurisdictions that an insurer has no duty to defend unless the insured tells it a defense is required.[1] In this case, WTC made no clear request for defense from

---

[1] *See, e.g., Hartford Accid. & Indemn. Co. v. Gulf Ins. Co.*, 776 F.2d 1380 (7th Cir. 1985) ("An insurance company is not required to intermeddle officiously where its services have not been requested"); *Ingalls Shipbuilding v. Federal Ins. Co.*, 410 F.3d 214, 227 (5th Cir. 2005) ("[I]t would be absurd to require an insurance company to force itself on ... a sophisticated party if its services have not been requested"); *CH Props. v. First Am. Title Ins. Co.,* 43 F. Supp. 3d 83 (D.P.R. 2104); *Erie Ins. Exchg. v. V.I. Enters.*, 264 F. Supp. 2d 261, 264-65 (D.V.I. 2003); *Rass Corp. v. The Travelers Companies*, 63 N.E. 3d 40 (Mass. App. Ct. 2016). Importantly, it is not enough for an insured to merely advise an insurer of a matter that might be defended: the insured must <u>actually</u> <u>request</u> a defense and make clear that "the insurer is expected to answer on its behalf." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 608 (Tex. 2008).

Starr.[2] All witnesses agree on this. *See* Breig Tr., ECF 60-5, pp. 97:18 - 98:24; 99:16 - 99:19; 101:3 - 101:7; Bahleda Tr., ECF 61-20, pp. 103:6 - 103:24. The fact that WTC did not clearly tender its defense to Starr should end its current argument, that Starr was liable for failing to provide such a defense. The court can reject WTC's argument without further ado.

II. **WTC Could Not Have Properly Tendered For Defense --
And Still Cannot -- Because WTC By July 2021 Had
Fully Addressed The Issues Jackson Was
Complaining About.**

Nonetheless, if the Court feels the need to go further, WTC's claim for defense fails for two other reasons as well. The first reason has already been noted. It is that as of July 2021 -- when WTC tendered this matter to Starr -- Jackson was **not** **asserting** any "claim" against WTC, to which a "defense" was required. Bahleda Tr., ECF 61-20, pp. 84:25 - 85:17; 103:7 - 103:24. Arguably, there had been a "claim" against WTC in August 2020, when Jackson noticed blistering paint at the Project, and demanded that WTC repair the work. SUF ¶ 8 - 9. Arguably, there had been a "claim" against WTC in November 2020, when Jackson saw further peeling, and sent WTC a notice to remedy. SUF ¶ 16.[3] But to the extent these earlier events constituted "claims," **they**

---

[2]  Or, apparently, Travelers. In its coverage position letter, Travelers recited that WTC had incurred $16M in remediating the Project, and "now seeks recovery [of that amount] from Travelers." ECF 61-15, Exh. 30. Travelers said nothing about any request for defense. So far as the record shows, WTC never objected, or wrote back to demand one. In June 2022 -- about eighteen months after this claim was asserted -- Travelers paid $2M in exchange for a release of any future claims WTC might make against the policy. *Id*. By this time, WTC had incurred thousands of dollars in counsel fees in connection with the repairs it had voluntarily performed. There is no evidence that WTC sought reimbursement of any of these counsel fees from Travelers, as one might expect if there was in fact a "claim" against the company, requiring "defense," during this time. There is no evidence that WTC asked for or received a single dollar of defense costs from Travelers in that nearly eighteen-month period.

[3]  It was those events Mr. Bahleda was recalling when he testified at his deposition that he initially thought WTC had faced "pending claims" at the Project. *See* Bahleda Tr., ECF 61-20, p. 25:6 - 25:10 ("Q: When you took over or were assigned this claim back in September of 2021, what did you understand the problem was with the Project? A: "That it was a remediation project, and that there were issues with the paint"); p. 54:23 ("My understanding was that Jackson Labs noticed a problem with the construction and ...were wanting Whiting-Turner to correct the problem"). However, as Mr. Bahleda's review progressed, it became clearer to him that WTC had fully resolved its dispute with Jackson Laboratories, and that WTC's repairs -- undertaken without a "final judgment" or a "settlement to which [Starr] agreed" -- had in fact addressed all the conditions Jackson was complaining about. *Id*., pp. 41:11 - 42:9; 58:16 - 58:20; 77:6 - 79:11; 84:25 - 85:17; 103:7 - 103:24. As a result, Mr. Bahleda ultimately concluded, the Starr Policy was not triggered and no coverage was owed. ECF 61, Exh. 27; Bahleda Tr., ECF 61-20, pp. 56:18 - 57:17.

**were fully resolved** by July 2021.  WTC voluntarily did the repairs Jackson demanded, SUF ¶ 19, and spent more than $17M doing so.  Once WTC committed to perform these repairs, using its own funds, Jackson had nothing more it was in a position to "claim."

WTC now suggests that when it agreed with Jackson to repair the conditions at the Project, it was simply "fronting" the costs of the disputed repairs.  *See* Breig Tr., ECF 60-5, pp. 82:8-15, Doc. 60-5, #1484.  It says it did so to mitigate damages in case of a lawsuit from Jackson on these issues.  *Id.* pp. 85:5-16.  It says it never conceded it was liable for the issues.  Opp. p. 4.  It argues that it meant to pursue a claim against Jackson at some future point to try to recoup some of the amounts it had spent.  Perhaps that is true, although the record suggests otherwise.[4]  But even if WTC were, in fact, to seek reimbursement this way, the recoupment would involve a claim by WTC against Jackson.  It would not be the result of a claim by Jackson against WTC.  And a claim by WTC against Jackson is not the kind of thing an insurer is required to "defend" under a general liability policy.[5]  An insurer has no duty to cover costs a policyholder incurs in affirmatively chasing

---

None of this is unusual.  A claims adjuster's perceptions evolve as facts become clearer.  WTC's attempts to draw some other conclusion are (at best) misleading, and in some cases flatly false.  *Compare, e.g.,* Bahleda Tr., ECF 61-20, pp. 54:23 - 55:19 (discussing Mr. Bahleda's impressions as of November 2, 2021) *with* WTC Opp. pp. 6, 10 (misrepresenting ECF 61-20, pp. 54:23 - 55:19, to state Mr. Bahleda 's understandings "as of February 2, 2022"); *see also* Bahleda Tr., ECF 61-20, pp. 56:18 - 47:17, 78:16 - 78:23; 84:25 - 85:17 (Mr. Bahleda's actual testimony of his understandings "as of February 2, 2022").

[4]     There is no evidence of any "fronting agreement" in the file, or any tolling agreement, or reservation of rights to recovery monies from Jackson; and WTC acknowledges it never entered or asked for one.  Breig Tr., ECF 60-5, pp. 83:21 - 84:2; Bahleda Tr., ECF 61-20, pp. 107:18 - 109:10.

[5]     Because WTC has provided Starr with very little information the ongoing mediation between WTC, EYP, Jackson, and the other parties, it remains unclear what live claim for relief Jackson may have against WTC. WTC has certainly never articulated one, despite repeated invitations from Starr to do so.

other parties to recover amounts voluntarily incurred.[6]

### III. Even If WTC Could (Somehow) Identify Some "Claim" By Jackson, Requiring "Defense" By WTC's Carriers, The Duty Was Owed By Travelers, Not Starr.

Finally, and perhaps most fundamentally: even if WTC had (somehow) been facing some "claim" by Jackson, for (some kind of) "damages," that an insurer might (somehow) be required to "defend" -- that defense would not be Starr's to provide. Bowers Tr., ECF 60-4, p. 80:4-6. The defense, if one was owed, was owed by the primary carrier (Travelers), and was to continue until Travelers "used up the applicable limit of insurance **in the payment of judgments or settlements** ...". Trav. Policy, ECF 60-1, p. 18, Sect. I.A.1.a.2.

Here, Travelers $2M payment did not satisfy any "judgment" in Jackson's favor. The payment did not fund the "settlement" of any claim by Jackson against WTC.[7] Thus, the payment did not exhaust Travelers limits, and it did not end Travelers obligation to defend WTC against whatever liabilities WTC might be facing. It is unknown why WTC, on receiving $2M from Travelers, chose to give Travelers a broad release of any further defense obligation (if it did). But whatever WTC's reasoning might have been, "settlements between the insurer and the insured are not the type of settlement referenced in the phrase at issue." *AGLIC v. Intel Corp.*, 2010 Del. Super. LEXIS 2603, at *35-38 (Super. Ct. July 29, 2010). To qualify as a "settlement," the payment must be made "to third parties, who are acting against the insured, to either satisfy a judgment or compromise an action." *Id.* "The primary insurer cannot extinguish its defense obligation simply

---

[6] *See, e.g., Travelers Indem. Co. of Am. v. Davachi,* 2016 U.S. Dist. LEXIS 13815, at *9 (D. Md. Feb. 4, 2016); *Bennett v. St. Paul Fire & Marine Ins. Co.*, 2006 U.S. Dist. LEXIS 29017, at *15 (D. Me. May 12, 2006); *Mount Vernon Fire Ins. Co. v. VisionAid, Inc.*, 477 Mass. 343, 349 (2017*); Goldberg v. Am. Home Assur. Co.*, 80 A.D.2d 409, 411 (N.Y. App. Div. 1981); *Red Head Brass, Inc. v. Buckeye Union Ins. Co.*, 135 Ohio App. 3d 616, 629 (1999).

[7] WTC's position -- made clear in its Opposition -- is that there has never been any settlement between WTC and Jackson, even today. *See* Brieg Tr., ECF 60-5, pp. 83:2 - 83:8; Bahleda Tr., ECF 61-20, pp. 77:6 - 77:23.

by tendering its indemnity limits to the insured and walking away from the fray." *County of Santa Clara v. U.S.F. & G*, 868 F. Supp. 274, 277 (N.D. Cal. 1994).[8]

Underscoring the point, the Starr Policy says, in pertinent part:

> [Starr] ha[s] the right and duty to defend any claim or suit against any Insured seeking damages to which this insurance applies ... [but only] when "Underlying Insurance" **ceases to apply because of exhaustion of its limits of insurance solely by payment of claims, settlements, judgments, or defense costs** subject to such limits, for damages to which this insurance also applies.

SUF ¶ 36. Here, Travelers paid nothing to Jackson in "claims, settlements, [or] judgments." It simply "tendered its indemnity limits to the insured and walk[ed] away from the fray." *Santa Clara*, 868 F. Supp. at 277. And even if Travelers payment to its insured could somehow, against all evidence, be viewed as a payment of "damages" to which the Travelers Policy applied, the "damages" in question were not damages to which the Starr Policy "also applied." Starr's Policy does not "apply" unless there is some "Ultimate Net Loss," i.e., some amounts "actually paid or payable due to a claim or suit for which you or an Insured are liable **either by a settlement to which we agreed or a final judgment**." Travelers payment was not made for "a settlement to which [Starr] agreed." It was not made for a "final judgment" in Jackson's favor. Starr, as excess carrier, has no defense obligation here.

## INDEMNITY

We have not discussed indemnity in this Reply. It seems we do not need to. On page 12 of its Opposition, WTC **admits** that there has been no "Ultimate Net Loss," and "[Starr's] indemnity

---

[8] *See also, e.g., Intel*, 2010 Del. Super. LEXIS 2603, at *35-38; *Fireman's Fund Ins. Co. v. Rairigh,* 59 Md. App. 305, 323 (1984); *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 499-500 (2007); *Aetna Cas. & Sur. Co. v. Sullivan*, 33 Mass. App. Ct. 154, 159 (1992); *Continental Cas. Co. v. North Am. Capacity Ins. Co.*, 2010 U.S. Dist. LEXIS 144580, at *51-52 (S.D. Tex. Jan. 13, 2010); *KB Home Jacksonville LLC v. Liberty Mut. Fire Ins. Co.*, 2019 U.S. Dist. LEXIS 151230, at *21 (M.D. Fla. Sep. 5, 2019); *Royal Ins. Co. of Am. v. Lexington Ins. Co.*, 2004 U.S. Dist. LEXIS 13532, at *10 (S.D.N.Y. July 19, 2004); *Santa Clara Valley Water Dist*, 89 Cal. App. 5th at 1054; *Virginia Sur. Ins. Co. v. RSUI Indem. Co.*, 2009 U.S. Dist. LEXIS 110535, at *19 (D. Ariz. Nov. 24, 2009).

obligation under the ... Policy [was] not ... triggered."  To the extent WTC's Opposition admits Starr has no "indemnity obligation," now or in the future, as to the $17M WTC allegedly spent, WTC's unfounded, last-minute argument as to "duty to defend" would appear to be the only issue left in the case.[9]

|  |  |
|---|---|
| | FOR THE PLAINTIFF, |
| | STARR INDEMNITY & LIABILITY COMPANY, |
| | By its Attorneys, |
| Dated: July 11, 2024 | */s/ Benjamin J. Wahrer* <br> Benjamin J. Wahrer, Esq. <br> Attorney for Plaintiff <br> Starr Indemnity & Liability Company |

**THOMPSON BOWIE & HATCH LLC**
415 Congress Street, Fifth Floor
P.O. Box 4630
Portland, ME 04112
(207) 774-2500
bwahrer@thompsonbowie.com

Eric B. Hermanson (pro hac vice)
Austin D. Moody (pro hac vice)
WHITE AND WILLIAMS LLP
101 Arch Street, Suite 1930
Boston MA  02110-1103
Telephone: (617) 748-5200
Fax: (617) 748-5201
hermansone@whiteandwilliams.com
moodya@whiteandwilliams.com

---

[9] Interestingly, although WTC no longer seems to be challenging Starr's view that there was no "Ultimate Loss," triggering an indemnification obligation as to the $17M in claimed "damages" under Starr's policy, WTC does continue to take issue with two other arguments Starr has made as to indemnity, namely: [1] that WTC's payment of $17M to remediate the conditions Jackson identified – without notifying Starr, and without allowing Starr to investigate or defend the claim Jackson had made – constituted a "voluntary payment"; and [2] that WTC's failure to notify Starr of its resolution of Jackson's claims, until after it spent $17M to correct those conditions, amounted to "late notice." Opp. pp. 12-14.  As to these points, Starr stands by its arguments.  *See* Starr. Mem., pp. 14-15.  If the court finds it necessary to reach these arguments, it can (and should) find Starr has no current or future indemnity obligations under the circumstances of this case.

7

## CERTIFICATE OF SERVICE

I, Benjamin J. Wahrer, hereby certify that on July 11, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to all parties of record.

>  */s/ Benjamin J. Wahrer*
> Benjamin J. Wahrer, Esq.
> Attorney for Plaintiff
> Starr Indemnity & Liability Company