# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| STARR INDEMNITY AND LIABILITY COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Docket No. 1:22-cv-00031-NT ) |
| THE WHITING-TURNER CONTRACTING COMPANY, | ) ) ) ) |
| Defendant. | ) |

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before me is a motion for summary judgment by Plaintiff Starr Indemnity and Liability Company (ECF No. 63). For the reasons stated below, the motion is **GRANTED**.

## BACKGROUND[1]

The Whiting-Turner Contracting Company ("**WTC**") is a general contractor and construction manager. Pl.'s Reply Statement of Material Facts ("**SMF**") ¶ 1 (ECF No. 69). Jackson Laboratory ("**Jackson Lab**") is a not-for-profit corporation located in Maine. SMF ¶ 2. In 2019, WTC signed a contract with Jackson Lab to serve as the construction manager for a project in Ellsworth, Maine converting a Lowes retail store into a rodent breeding facility (the "**Project**"). SMF ¶ 3. WTC hired

---

[1] Consistent with my summary judgment obligations, I recite the facts based on the record before me and in the light most favorable to The Whiting-Turner Contracting Company ("**WTC**") as the nonmoving party. *See Dixon-Tribou v. McDonough*, 86 F.4th 453, 455 (1st Cir. 2023). Where I cite a fact that was not admitted in the parties' statement of material facts, I have recited the fact consistent with its record support and in the light most favorable to WTC. *See id.*; D. Me. Local R. 56.

subcontractors to perform the painting, carpentry, and drywall work on the Project. SMF ¶ 5.

In November of 2020, the Project architect informed WTC that it had observed blistering, pinholes, and fisheyes in the paint at the facility. SMF ¶¶ 14–15.[2] In Jackson Lab's view, these paint issues were caused by defective work by WTC or its subcontractors. Decl. of Jamieson Scott Breig in Supp. of Mem. in Opp'n to Mot. for Summ. J. ("**Breig Decl.**") ¶ 2 (ECF No. 65). Later that month, Jackson Lab sent a letter to WTC about the paint issues. SMF ¶ 16. It read in part: "Please consider this letter as [WTC]'s notice to remedy the discovery of nonconforming work as it relates to the warranty requirements as described in [the construction contract]." Nov. 11, 2020 Jackson Lab Letter (ECF No. 61-6). The letter also requested a copy of WTC's notice to its insurer. SMF ¶ 16; Nov. 11, 2020 Jackson Lab Letter. Later in November of 2020, the Project architect sent a letter to WTC and attached a report from a consulting firm that blamed WTC for the paint problems. SMF ¶ 17; Nov. 30, 2020 EYP Letter (ECF No. 61-7). The letter also called for a "written remediation plan" and "recovery schedule" from WTC. Nov. 30, 2020 EYP Letter, at 2.

In WTC's view, the paint problems were caused by improper plans and specifications from the Project architect. Breig Decl. ¶ 2. But even though WTC did not think it was responsible, it fixed the paint problems anyway, spending about $17

---

[2]  An earlier paint issue arose on the Project, but it is not the subject of this suit. *See* Pl.'s Reply Statement of Material Facts ("**SMF**") ¶¶ 6–13 (ECF No. 69); The Whiting-Turner Contracting Company's Resp. Mem. in Opp'n to Mot. for Summ. J. ("**WTC Opp'n**") 3 n.1 (ECF No. 66).

million in repair costs. SMF ¶¶ 18–19. No lawsuit was ever filed against WTC related to the paint issues on the Project. SMF ¶ 21.

WTC had two types of insurance relevant to this dispute: primary coverage issued by Travelers Indemnity Company ("**Travelers**") and excess coverage issued by The Starr Indemnity and Liability Company ("**Starr**"). SMF ¶¶ 24, 32; *see also* Local Rule 56(h) R. Ex. 2 ("**Starr Policy**") (ECF No. 60-2). In January of 2021, WTC provided notice to Travelers (its primary insurer) of Jackson Lab's allegations. SMF ¶ 24. Travelers confirmed receipt of WTC's notice, which Travelers characterized as a "potential claim." SMF ¶ 27. In an October 2021 letter to WTC, Travelers took the position that although portions of WTC's repair costs were precluded from coverage, Travelers would nonetheless issue a check for its per-occurrence policy limit of $2 million in exchange for a "fully executed policyholder release." SMF ¶ 52.

WTC did not notify Starr (its excess insurer) of the paint issues on the Project until July of 2021. SMF ¶ 38. WTC's notice to Starr requested coverage under the Starr Policy and advised Starr that WTC had been directed to perform repair work by Jackson Lab, had agreed to perform that work, and had incurred approximately $17 million in repair costs. SMF ¶ 39. On February 2, 2022, Starr sent WTC a letter through counsel reporting its position that the Starr Policy provided no coverage for the matter. SMF ¶ 48.

That same day, Starr filed a one-count complaint in this Court against WTC, seeking a declaratory judgment under 28 U.S.C. § 2201 that it has no duty to provide coverage to WTC with respect to the Project. Compl. for Declaratory J. ("**Compl.**")

3

¶¶ 46–47 (ECF No. 1). Specifically, Starr asks me to "declare that Starr has no duty to indemnify WTC with respect to the Project or otherwise cover any amounts that WTC has incurred with respect to the Project" and to "order such other relief as may be appropriate, just and proper." Compl. 11. The case proceeded through discovery, and the matter is now before me on Starr's motion for summary judgment.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Beijing Abace Biology Co., Ltd. v. Zhang*, 122 F.4th 448, 452 (1st Cir. 2024) (quoting *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992)). "A fact is material if it could affect the outcome of the case." *Id.* I must view the summary judgment record in the light most favorable to the nonmoving party. *Sevelittle v. Guardian Life Ins. Co. of Am.*, 123 F.4th 53, 59 (1st Cir. 2024).

## DISCUSSION

### I. Duty to Indemnify

Initially, this summary judgment motion appeared to be about whether Starr has a duty to indemnify WTC. *See* Starr's Mot. for Summ. J. ("**Starr Mot.**") 8–14 (ECF No. 63). This was no surprise, as Starr's requested declaration focused on indemnity. Compl. 11. However, during summary judgment briefing, WTC conceded

4

the indemnity issue.[3] The Whiting-Turner Contracting Company's Resp. Mem. in Opp'n to Mot. for Summ. J. ("**WTC Opp'n**") 12 (ECF No. 66) ("WTC does not dispute Starr's contention that its indemnity obligation under the Starr Policy has not yet been triggered.").[4] Summary judgment is therefore warranted on the indemnity issue, and I declare, based on the record before me, that Starr has no duty to indemnify WTC with respect to the Project.

## II.   Duty to Defend

Despite its concession on the indemnity issue, WTC maintains that I should not grant summary judgment in Starr's favor because WTC is entitled to a defense under the Starr Policy. WTC Opp'n 9–12. WTC adopted this position on the duty to defend at some point after it filed its Answer and before it filed its Local Rule 56(h) memorandum. *See* Answer of The Whiting-Turner Contracting Company (ECF No. 16); Def. The Whiting-Turner Contracting Company's Local Rule 56(h) Responsive

---

[3]   Perhaps WTC determined that its original position on indemnity was a non-starter, given that the Starr Policy covers only the " 'Ultimate Net Loss' . . . that [WTC] becomes *legally obligated to pay* for loss or damage . . . ." SMF ¶ 33 (emphasis added). The Starr Policy defines "Ultimate Net Loss" as the amount "actually paid or payable due to a claim or suit for which [WTC is] liable *either by a settlement to which [Starr] agreed or a final judgment.*" SMF ¶ 34 (emphasis added). As noted above, no lawsuit has ever been filed against WTC concerning the paint issues on the Project, and WTC first approached Starr about coverage after WTC had already remedied those issues. *See supra* 3. Moreover, the Starr Policy contains a "no voluntary payments" clause, under which "[n]o Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [Starr's] consent." SMF ¶ 35.

[4]   Elsewhere in its brief, WTC contends that the Starr Policy provides "potential indemnity coverage." WTC Opp'n 1, 2. But I must analyze the summary judgment record before me, not a future hypothetical situation. Because WTC concedes that Starr has no indemnity obligation based on the current record, that ends my inquiry.

Pre-Filing Conference Mem. (ECF No. 57). At no point did WTC file a counterclaim for a declaration on whether Starr has a duty to defend.[5]

The Starr Policy says the following on the duty to defend:

> We have the right and duty to defend any claim or suit against any Insured[6] seeking damages to which this insurance applies when "Underlying Insurance" ceases to apply because of exhaustion of its limits of insurance solely by payment of claims, settlements, judgments, or defense costs subject to such limits, for damages to which this insurance also applies.

Starr Policy 32.

Starr first argues that WTC is not facing any "claim or suit" for "damages" that would trigger the duty to defend. *See* Starr Mot. 15; Reply in Further Supp. of Starr's Mot. for Summ. J. ("**Starr Reply**") 3–5 (ECF No. 68). WTC acknowledges that no lawsuit has ever been filed concerning the paint issues on the Project. WTC Opp'n 5 & n.3. But, WTC points out, the Starr Policy's duty to defend does not just cover suits, it also covers "claim[s]." WTC Opp'n 8–9, 10. The Starr Policy does not define the term "claim," and WTC argues for an expansive interpretation. WTC Opp'n 10. According to WTC, "claim" essentially means competing views, and because Jackson Lab and WTC still disagree about who caused the paint issues, a "claim" therefore exists against WTC that triggers Starr's duty to defend. WTC Opp'n 10.

---

[5] Though WTC filed no counterclaim, I find that Starr's requested declaration—which focuses on indemnity but also requests that I declare that Starr has no duty to "otherwise cover any amounts that WTC has incurred with respect to the Project" —is broad enough to encompass the duty to defend dispute. *See* Compl. for Declaratory J. 11 (ECF No. 1).

[6] WTC is the "Named Insured" in the Starr Policy. Local Rule 56(h) R. Ex. 2, at 2 (ECF No. 60-2).

Starr responds that if a "claim" ever existed, it was in late 2020 when Jackson Lab identified the paint issues and sent WTC a notice to remedy. Starr Reply 3. But Starr contends that this "claim" was resolved because WTC voluntarily repaired the damage. Starr Reply 3–4. According to Starr, by the time WTC approached Starr in July of 2021 seeking coverage, WTC faced no claim for damages from Jackson Lab. If anything, Starr maintains, WTC may have a claim *against* Jackson Lab to recoup its repair costs, but WTC's affirmative claims against other parties would not trigger Starr's duty to defend WTC. Starr Reply 4–5.

In the typical duty to defend case, the parties dispute whether the insurer must pay for the insured's legal defense in an actual lawsuit. *See, e.g.*, *Zurich Am. Ins. Co. v. Elec. Me. LLC*, 325 F. Supp. 3d 198 (D. Me. 2018). Courts settle this dispute with the "comparison test," which involves comparing "the allegations in the underlying complaint with the terms of the applicable insurance policy to determine whether the complaint falls within the policy's coverage." *Barnie's Bar & Grill, Inc. v. U.S. Liab. Ins. Co.*, 2016 ME 181, ¶ 6, 152 A.3d 613.[7] In certain situations, something less than

---

[7] During our Local Rule 56(h) conference, the parties previewed their dispute about whether Maine or Maryland law governs interpretation of the Starr Policy. *See* Minute Entry (ECF No. 58). Starr's opening brief reports that the choice-of-law issue appears moot because Maine and Maryland law are not materially different on any key issue in this case. Starr's Mot. for Summ. J. ("**Starr Mot.**") 2 n.1 (ECF No. 63). WTC does not meaningfully counter this assertion but instead maintains that Maryland law governs, while noting that "because Starr relies on the law of both Maine and Maryland in the Motion, WTC also references both." WTC Opp'n 14 n.8.

Under Maryland law, the duty to defend attaches " 'when there exists a *potentiality* that the claim could be covered by the policy.' " *Cornerstone Title & Escrow, Inc. v. Evanston Ins. Co.*, 555 Fed. Appx. 230, 234 (4th Cir. 2014) (quoting *Pac. Emp'rs Ins. Co. v. Eig*, 864 A.2d 240, 248 (Md. Ct. Spec. App. 2004)). Unsurprisingly, to determine whether this "potentiality" exists, courts must compare the policy and the underlying action. *Id.* at 234–35. Maryland's duty to defend test is therefore essentially the same as Maine's. *See Med. Mut. Ins. Co. of Me. v. Burka*, 899 F.3d 61, 67–68 (1st Cir. 2018) (quoting *Barnie's Bar & Grill, Inc. v. U.S. Liab. Ins. Co.*, 2016 ME 181, ¶ 7, 152 A.3d 613) (stating that under Maine's comparison test, the court " 'examine[s] the underlying complaint for any potential factual or legal basis that may obligate the insurer to defend the insured' "). Accordingly, I agree with Starr that

an actual court complaint may trigger the duty to defend. *See, e.g., Post v. St. Paul Travelers Ins. Co.*, 593 F. Supp. 2d 766, 771–72 (E.D. Pa. 2009) (concluding that demand letters constituted a "claim" under the policy, which triggered the duty to defend).[8] But even then, the court is comparing the policy to the actual demand for damages against the insured. *Id.* at 773–75.

This is not the typical case because WTC has not been sued and nothing in the record suggests that a claim or suit against WTC is coming.[9] Against this backdrop, Starr has the better argument. WTC's interpretation of the word "claim" does not square with the relevant policy language, which requires more than a disagreement about fault or responsibility to trigger the duty to defend. For a claim to trigger that duty, the claim must be "against" WTC and must "seek[ ] damages." Starr Policy 32. On this record, WTC is not facing any "claim" "seeking damages" as required to trigger the duty to defend. *See* Starr Policy 32.

As one treatise puts it, "[c]ontractors are accustomed to solving problems[,]" but "a tension can arise between the need to timely address [ ] issue[s]" and the need to "take the necessary steps to ensure preservation of available insurance coverage."

---

I need not resolve which state's law controls. *Cf. Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 154, 158 (1st Cir. 2005) ("[W]hen the resolution of a choice-of-law determination would not alter the disposition of a legal question, a reviewing court need not decide which body of law controls.").

[8]   *See also Ryan v. Royal Ins. Co. of Am.*, 916 F.2d 731, 741–42 (1st Cir. 1990) (interpreting New York law and concluding that although an insurer's duty to defend may arise without a lawsuit, no such duty arose because a state agency's communications about alleged toxic waste liability were not coercive, adversarial, or serious enough to trigger a pre-suit duty to defend).

[9]   Nor is WTC arguing that its defense costs—if any—incurred responding to the notice to remedy nonconforming work should be covered by Starr. *See* WTC Opp'n 5 (maintaining that "Starr's defense coverage obligation was not triggered until October 2021," after WTC had addressed the paint issues on the Project).

4 Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor on Construction Law*, § 11:159 (2024). Working through this tension "can be a delicate dance." *Id.* Here, it appears that WTC got tripped up. Because the record before me reveals no "claim or suit against [WTC] seeking damages," Starr has no duty to defend WTC. *See* Starr Policy 32.[10]

## CONCLUSION

For the reasons stated above, I **GRANT** Plaintiff Starr Indemnity and Liability Company's motion for summary judgment (ECF No. 63), and I declare based on the record before me that Plaintiff Starr Indemnity and Liability Company has no duty to indemnify or defend Defendant Whiting-Turner Contracting Company with respect to the Project.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 20th day of February, 2025.

---

[10] Because Starr's first argument resolves the issue, I do not reach its additional arguments that the duty to defend has not been triggered because WTC never requested a defense from Starr and WTC's underlying insurance was not properly exhausted. *See* Starr Mot. 15–18; Reply in Further Supp. of Starr's Mot. for Summ. J. 2–3, 5–6 (ECF No. 68).